IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


SHAWN COSTELLO,                      )
                                     )
     Plaintiff,                      )
                                     )
     v.                              )     1:03CV1050
                                     )
THE UNIVERSITY OF NORTH              )
CAROLINA AT GREENSBORO, THE          )
UNIVERSITY OF NORTH CAROLINA,        )
THE BOARD OF GOVERNORS OF THE        )
UNIVERSITY NORTH CAROLINA, and       )
TERRANCE STEWART, individually,      )
                                     )
     Defendants.                     )


                    MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

     Plaintiff Shawn Costello, a former student and member of the golf team at Defendant The University of North Carolina at Greensboro ("UNCG"), brings this federal question action against Defendants UNCG, The University of North Carolina, and The Board of Governors of the University of North Carolina (collectively, "Institutional Defendants"); and Defendant Terrance Stewart, the coach of the UNCG golf team, individually. Plaintiff's disability discrimination suit alleges claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; Title III of the Americans with Disabilities Act of 1990 ("Title III" or "Title III of the ADA"), 42 U.S.C. §§ 12181 et seq.; Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794; and Section 1 of the Civil Rights Act of 1871 ("§ 1983"), 42 U.S.C. § 1983.  This matter is now before the court on Defendants' motion to dismiss and Plaintiff's motions to amend his complaint and to continue the hearing of Defendants' motion to dismiss pending a decision by the United States Supreme Court.  For the reasons set forth herein, Plaintiff's motions to continue and to amend will be DENIED and Defendants' motion to dismiss will be GRANTED in part and DENIED in part.

**I. BACKGROUND**

The following facts are presented in the light most favorable to Plaintiff.[1]

Plaintiff Shawn Costello, a North Carolina resident, was a student at Defendant UNCG from August 2001 to May 2003.  While enrolled at UNCG, Plaintiff played on the golf team as a scholarship player, under Defendant Coach Terrance Stewart.

In August 2002, the beginning of Plaintiff's sophomore year, Plaintiff was diagnosed with Obsessive-Compulsive Disorder ("OCD").  Plaintiff's father notified Stewart of Plaintiff's diagnosis and Plaintiff's need for a scheduling accommodation for a weekly appointment with a psychologist.  Stewart responded that he would treat Plaintiff's OCD like a broken ankle and would "red

---

[1] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

shirt" him for the rest of the season.  However, when Plaintiff
told Stewart that Dr. Eric Hollander, a leading expert on OCD,
had advised Plaintiff it would be best for him to continue to
play golf and improve his game, Stewart retreated from his
earlier position and allowed Plaintiff to play on the team.

Plaintiff's weekly appointments with Dr. Dennis McKnight,
Plaintiff's treating psychologist, were set for Tuesdays and the
schedule was approved by Stewart.  Despite his prior approval, on
or about October 11, 2002, Stewart refused to allow Plaintiff to
make up a Tuesday qualifying round of golf missed because of his
weekly appointment.

During the course of the 2002-2003 school year, Stewart made
several statements to Plaintiff and others about Plaintiff's
performance and OCD.  In the fall of 2002, Stewart told Sam
Clark, one of Plaintiff's teammates, "[B]etween me and you, I am
worried about taking [Plaintiff] to tournaments because I am
worried that [he] will take a turn like he had last week and then
I would only have four players instead of five."  (Compl. ¶ 16.)
Clark, in a meeting with Nelson Bobb, UNCG's athletic director,
told Bobb that Stewart said to Plaintiff, "I do not give a damn
about your OCD."  (Id. ¶ 18.)  Bobb's response was that Plaintiff
was not a credible source and could not remember things because
of his OCD.  (Id. ¶ 19.)  On February 12, 2003, Stewart told
Plaintiff to transfer to another school because he was not

3

Stewart's "kind of player" and was not going to get an opportunity to play at UNCG. (<u>Id.</u> at 20.)

In the spring of 2003, Dr. McKnight notified Plaintiff that Stewart had reported to the office of student affairs at UNCG that Plaintiff had made suicidal threats and homicidal threats toward his own parents. The statements attributed to Plaintiff were false and the falsity was confirmed by letter from Dr. McKnight to Stewart, Bobb, and Carol Disque, UNCG's vice chancellor for student affairs. Following this incident, Plaintiff met with Disque and Dr. John Edwards, director of UNCG's Counseling and Testing Center. Plaintiff informed Disque that Stewart used abusive and vulgar language, encouraged cheating that was covered up by the athletic department, and discriminated against Plaintiff because of his OCD.

Following Plaintiff's meeting with Disque and Edwards, Stewart's treatment of Plaintiff worsened. Stewart eventually dismissed Plaintiff from the golf team on the basis of missed practices, although the missed practices were for doctor appointments already approved. When Plaintiff was dismissed from the golf team, his scholarship was revoked and he was forced to transfer to another school to continue to play collegiate golf. Even with his transfer, Plaintiff lost one year of collegiate eligibility.

4

## II. PROCEDURAL POSTURE

Plaintiff filed a four-count complaint alleging discrimination on the basis of disability. Within their answer, Defendants moved for complete dismissal of Plaintiff's claims. Before responding to Defendants' motion to dismiss, Plaintiff moved to amend his complaint.

The marrow of Plaintiff's proposed amendment was to remove his claim for violation of Title III of the ADA (discrimination in public accommodations) and replace it with a claim for violation of Title II of the Americans with Disabilities Act of 1990 ("Title II" or "Title II of the ADA") (discrimination in public services), 42 U.S.C. §§ 12131 et seq. When the motion to amend was made, the then-controlling authority of the Fourth Circuit Court of Appeals held Congress did not validly abrogate the states' Eleventh Amendment immunity to suit under Title II of the ADA for monetary damages. Wessel v. Glendening, 306 F.3d 203, 215 (4th Cir. 2002). However, pending at that time was an appeal to the United States Supreme Court challenging a similar decision by the Sixth Circuit in Lane v. Tennessee, 315 F.3d 680 (6th Cir. 2003). Presumably knowing of the rule in Wessel, Plaintiff Costello moved to continue the hearing of Defendants' motion to dismiss until the resolution of Lane.

Lane has now been decided, rendering Plaintiff's motion to continue moot. See Tennessee v. Lane, 541 U.S. 509, 124 S. Ct.

5

1978 (2004).  Defendants' motion to dismiss and Plaintiff's motion to amend remain pending before the court.  Because the court's decision on Plaintiff's motion to amend will undoubtedly effect Defendants' motion to dismiss, the court will address the amendment first.  The court will then address whether dismissal is appropriate.

**III. PLAINTIFF'S MOTION TO AMEND**

    **A.    Standard of Review**

Amendments to a complaint after a responsive pleading has been served may only be made by leave of court or by written consent of the opposing party.  Fed. R. Civ. P. 15(a).  A party seeking amendment from the court need not file a supporting brief under the local rules, but "must state good cause" for the amendment.  L.R. 7.3(j).  Once a motion is filed, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Under the rule's liberal construction, see Ward Elecs. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987), motions to amend should be granted absent extraordinary circumstances.  Such circumstances include undue delay, bad faith or dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment.  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  A motion to amend is futile, and thus should be denied, if the proposed amendment "is clearly insufficient because of

6

substantive or procedural considerations." Goewey v. United States, 886 F. Supp. 1268, 1284 (D.S.C. 1995); see Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990) ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss.").

**B. Analysis**

As an initial matter, the court notes Plaintiff's motion does not comply with local rules because Plaintiff offers no good cause for amendment, merely a statement of the proposed amendment itself. See L.R. 7.3(j). Regardless of this deficiency, justice would not be served by granting Plaintiff's motion to amend because it is futile.

It is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities. Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974). Because the institutional Defendants are alter egos of the State of North Carolina, they enjoy the state's Eleventh Amendment immunity. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1139 (4th Cir. 1990) (finding that the Eleventh Amendment bars suit against the Board of Governors of UNC); Bartges v. University of N.C. at Charlotte, 908 F. Supp. 1312, 1332-33 (W.D.N.C. 1995) (finding UNC at Charlotte to be immune under the

7

Eleventh Amendment). Thus, the Eleventh Amendment bars Plaintiff's claim for violation of Title II of the ADA unless Congress clearly and validly abrogated the state's immunity.

In <u>Wessel v. Glendening</u>, a disabled state prisoner alleged that Maryland denied him the ability to earn good conduct credits through institutional work and a boot camp program. 306 F.3d 203, 206 (4th Cir. 2002). The Fourth Circuit Court of Appeals, in determining whether Congress abrogated state sovereign immunity in Title II of the ADA, examined the full breadth of the statute in light of the general constitutional right of the disabled "not to be subject to arbitrary or irrational exclusion from the services, programs, or benefits provided by the state." <u>Id.</u> at 210. The court, applying the three-step "congruence and proportionality test" from <u>Board of Trustees of University of Alabama v. Garrett</u>, 531 U.S. 356, 121 S. Ct. 955 (2001), found that, by passing Title II of the ADA, Congress acted on the basis of an inadequate record and imposed a remedy "that is neither congruent nor proportional to the problem it identified." <u>Wessel</u>, 306 F.3d at 215. Thus, the court held "Congress did not validly abrogate the sovereign immunity of the states when it enacted . . . Title II of the ADA," because Congress exceeded its authority under the Enforcement Clause of the Fourteenth Amendment. <u>Id.</u>

In the more recent Supreme Court case of <u>Tennessee v. Lane</u>, a class of paraplegics alleged that Tennessee had denied them physical access to the state's courts in violation of Title II of the ADA. 541 U.S. 509, __, 124 S. Ct. 1978, 1982-83 (2004). On appeal, the Court applied a more pointed analysis than that of the Fourth Circuit in <u>Wessel</u>, focusing on the specific constitutional right to be protected. <u>Id.</u> at __, 124 S. Ct. at 1992 ("[N]othing in our case law requires us to consider Title II, with its wide variety of applications, as an undifferentiated whole."). The Court, finding the right of judicial access to be among the "basic constitutional guarantees, infringements of which are subject to more searching judicial review," <u>id.</u> at __, 124 S. Ct. at 1988, held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority." <u>Id.</u> at __, 124 S. Ct. at 1994. In reaching its conclusion, the Court made abundantly clear that its holding was limited to cases involving the fundamental right of access to the courts:

> Whatever might be said about Title II's other applications, the question presented in this case is not whether Congress can validly subject the States to private suits for money damages for failing to provide reasonable access to hockey rinks, or even to voting booths, but whether Congress had the power under § 5 to enforce the constitutional right of access to the courts. Because we find that Title II unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services, we need go no further.

9

Id. at __, 124 S. Ct. at 1992-93 (2004).

Plaintiff's proposed amendment is futile because Lane did not overturn Wessel. Considering the Supreme Court's particularized approach in Lane, the broader holding in Wessel remains intact, except as to the right of access to courts or equivalent fundamental rights. See Spencer v. Easter, No. 02-7722, 2004 WL 2093971, at *1 (4th Cir. Sept. 21, 2004) (recognizing that the narrow and limited holding in Lane did not address non-fundamental rights). Plaintiff's suit involves neither. Here, the substance of Plaintiff's ADA claim, unaffected by the proposed amendment, is that the institutional Defendants' actions resulted in Plaintiff's dismissal from the collegiate golf team and the loss of his athletic scholarship. (Compl. ¶ 26.) Neither the privilege to play collegiate sports nor the benefit of receiving a scholarship to do so, rises to the level of a right, let alone a fundamental right as was at issue in Lane.[2] Thus, Wessel continues to control within this circuit

---

[2] Even if the court were to construe Defendants' actions as impacting Plaintiff's education, the amendment would still be futile. See McNulty v. Board of Educ. of Calvert County, No. Civ.A. DKC 2003-2520, 2004 WL 1554401, at *3-*4 (D. Md. July 8, 2004) (holding that Eleventh Amendment immunity remains intact for education claims under Title II of the ADA after Tennessee v. Lane, 541 U.S. 509, 124 S. Ct. 1978 (2004)). The Supreme Court has not "identified education as a fundamental right," whether primary or secondary education. Sellers by Sellers v. School Bd. of City of Mannassas, Va., 141 F.3d 524, 531 (4th Cir. 1998) (citing San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35, 93 S. Ct. 1278, 1297-98 (1973)), cert. denied, 522 U.S. 871
(continued...)

10

and the institutional Defendants retain their Eleventh Amendment immunity. As a result, Plaintiff's proposed amendment fails to state a claim upon which relief can be granted and will be denied as futile.[3]

**IV. DEFENDANTS' MOTION TO DISMISS**

The court, having denied Plaintiff's motion to amend the complaint, will now address whether Plaintiff's original complaint should be dismissed.

**A.   Standard of Review**

A defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings, but does not seek to resolve disputes surrounding the facts. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the challenged

---

[2](...continued)
(1998); see also Plyer v. Doe, 457 U.S. 202, 221, 102 S. Ct. 2382, 2396 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."). Plaintiff's argument would require an even greater leap of logic because any interference would be with his postsecondary education.

[3] Bad faith provides another ground for denying Plaintiff's motion. An amendment is in bad faith where, among other reasons, it is brought merely for the purpose of circumventing a dispositive motion. See Sandcrest Outpatient Servs., P.A. v. Cumberland County Hosp. Sys., Inc., 853 F.2d 1139, 1149 (4th Cir. 1998) (affirming denial of a motion to amend in part because "the proposed amendment appears to have been an after-thought by appellant, possibly prompted only by the concern that it would lose on the summary judgment motion."). The timing, substance, and content of Plaintiff's motion to amend taken together with his motion to stay show an effort to amend solely to defeat Defendants' motion to dismiss.

11

pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff will ultimately prevail on his claim, but whether he is entitled to offer evidence to support the claim. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The pleading must be liberally construed in the light most favorable to the non-moving party and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).

**B. Analysis**

The complaint alleges claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; Title III of the ADA; Section 504 of the Rehabilitation Act of 1973; and § 1983.[4] Defendants move for complete dismissal.[5]

---

[4] Plaintiff's constitutional claims are brought against all Defendants. (Compl. ¶¶ 27-28.) The remaining claims, however, are brought only against UNCG.

[5] It is noteworthy that Defendants' motion to dismiss went essentially unopposed. In response to Defendants' motion, Plaintiff offered no argument and merely stated he was relying on Lane, "on the verified Complaint, on the Amended Complaint, and
(continued...)

12

### 1. Plaintiff's Constitutional Claims

In his first claim, Plaintiff alleges Defendants denied "his rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution." (Compl. ¶ 28.) Defendants argue Plaintiff's constitutional claims should be denied because the Fourteenth Amendment creates no cause of action. (Mem. Law Supp. Defs.' Mot. Dismiss Compl. at 4.)

Defendants are correct. The Fourteenth Amendment does not create a direct cause of action. Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995). Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgment of the protections contained in the Constitution, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119-20, 112 S. Ct. 1061, 1065-66 (1992). As a result, the Fourth Circuit has explained that a discrimination "claim under the Fourteenth Amendment merges into [a] § 1983 claim." Hughes, 48 F.3d at 1383 n.6; see Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1368 (4th Cir. 1989) ("To assert as a constitutional claim the selfsame rights which Congress has endeavored to protect through specific statutory

---

[5](...continued)
the arguments and authorities therein." (Pl.'s Resp. Mot. Dismiss.) Considering the motion to amend has been denied and Lane is not relevant to any claims brought in the complaint, Plaintiff is left with only a facial defense to dismissal.

13

schemes [is prohibited] . . . until the remedies provided by the administrative process have been exhausted"; quoting <u>H. R. v. Hornbeck</u>, 524 F. Supp. 215, 222 (D. Md. 1981)). Therefore, Plaintiff's Fourteenth Amendment claims are prohibited and will be dismissed.

### 2. Plaintiff's Title III Claim

In his second claim, Plaintiff alleges UNCG's "conduct violates Title III of the ADA . . . and its implementing regulations." (Compl. ¶ 32.) Plaintiff further alleges UNCG's refusal to reasonably accommodate Plaintiff violates 42 U.S.C. § 12181(b)(2)(A)(ii), found within Title III. (Compl. ¶ 33.) Defendants argue Plaintiff cannot prevail on his claim for violations of Title III of the ADA, because Defendant UNCG, as a public entity, is not a place of "public accommodation" as defined by Title III. (Mem. Law Supp. Defs.' Mot. Dismiss Compl. at 6.)

Title III of the ADA provides "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "place of public accommodation," however, applies only to private entities providing public accommodations, not to

14

public entities.  See 42 U.S.C. § 12181(6) (defining a "private entity" as any entity other than a "public entity"); id. § 12181(7) (setting forth examples of "private entities" considered public accommodations); see, e.g., Sandison v. Michigan High Sch. Athletic Ass'n, Inc., 64 F.3d 1026, 1036 (6th Cir. 1995) (holding that Title III did not apply to discrimination on public school grounds or in public parks).  Therefore, because there is no dispute UNCG is not a public entity, it is not subject to Title III of the ADA.  Plaintiff's claim will be dismissed.

### 3. Plaintiff's Rehabilitation Act Claim

In his third claim, Plaintiff alleges UNCG's acts, omissions, and practices deprived him of his federal rights to accommodation and of educational and related services or programs to meet his unique needs.  (Compl. ¶¶ 35, 39.)  Defendants argue for dismissal because Plaintiff has failed to allege he was "otherwise qualified" (Mem. Law Supp. Defs.' Mot. Dismiss Compl. at 8-10), an element of a prima facie case under the Rehabilitation Act.  See Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995) (setting forth the elements of a prima facie case for violation of § 504 of the Rehabilitation Act).  Defendants set forth statutory, regulatory, and case law definitions of "otherwise qualified," and finding no comparable allegations in Plaintiff's complaint, contend dismissal is proper.

15

The court need not place such intense scrutiny on the allegations in Plaintiff's complaint. The pleading requirements in federal courts are modest. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). It is sufficient for a pleader to allege facts, directly or indirectly, that support each element of her claim.[6] Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002).

Plaintiff has met the modest pleading requirements in federal courts by impliedly alleging that, with or without reasonable accommodation, he met the necessary requirements for UNCG's golf program. See Tyndall v. National Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 212-13 (4th Cir. 1994). There is no doubt Plaintiff met the program requirements before being diagnosed with OCD because he was on the competitive golf team and received

---

[6] In light of the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 997 (2002), in which the court stated that a prima facie case "is an evidentiary standard, not a pleading requirement," it is questionable whether Plaintiff must even meet this burden. See generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (discussing the significance of the use of "claim" in Rule 8(a) instead of "cause of action," as was previously required under code pleading standards).

16

a scholarship for his participation. (Compl. ¶ 9.) When Stewart
learned of Plaintiff's diagnosis, he was initially concerned with
Plaintiff's qualifications, but later determined Plaintiff able
to play golf despite his disability. (Id. ¶¶ 12-16.) It was
only after Plaintiff missed practices, allegedly because of
doctor appointments previously approved by Stewart as a
reasonable accommodation, that Plaintiff was dismissed from the
team. (Id. ¶ 15.) These allegations are sufficient to imply
that Plaintiff was "otherwise qualified" to participate in the
golf program. As a result, Defendants' motion will be denied as
to this claim.

### 4. Plaintiff's § 1983 Claim

In his fourth and last claim, Plaintiff brings a § 1983
claim against UNCG for having policies and procedures which
failed to accommodate Plaintiff or his alleged disabilities,
constituting a violation of Plaintiff's constitutional and legal
rights. (Compl. ¶¶ 41-43.) Defendants argue for dismissal
because UNCG is not a "person" subject to suit under § 1983.
(Mem. Law Supp. Defs.' Mot. Dismiss Compl. at 5-6.)

Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom or usage, of any State or
> Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the Untied
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall

17

be liable to the party injured in an action at law,
suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  The Supreme Court, in interpreting § 1983, has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989).  This holding necessarily excludes UNCG from liability under § 1983.  For this reason, Defendants' motion to dismiss will be granted as to this claim.

### 5. Plaintiff's Prayer for Punitive Damages

In paragraph 2 of the complaint's prayer for relief, Plaintiff prays for punitive damages for violation of his civil rights.  (Compl. at 9.)  Defendants move to dismiss this prayer for punitive damages because the institutional Defendants are immune from punitive damages and no federal claims are brought against Defendant Stewart individually.  (Mem. Law Supp. Defs.' Mot. Dismiss Compl. at 7.)

It is unnecessary to address Defendants' arguments because they assume punitive damages may be awarded under § 504 of the Rehabilitation Act, the only claim surviving dismissal.  They cannot.  The United States Supreme Court has unequivocally held that, like suits brought under Title VII of the Civil Rights Act of 1964, punitive damages cannot be awarded for violations of § 504 of the Rehabilitation Act.  See Barnes v. Gorman, 536 U.S.

18

181, 189, 122 S. Ct. 2097, 2103 (2002). Therefore, Plaintiff's prayer for punitive damages will be dismissed.

**V. CONCLUSION**

For the reasons stated herein,

IT IS ORDERED that Plaintiff's Motion for Extension of Time to Respond and Continuance of Hearing of Defendants' Motion to Dismiss [16] is DENIED as moot and Plaintiff's Motion to Amend Complaint [15] is DENIED as futile.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Complaint [9] is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Plaintiff's claims for violation of the United States Constitution (Count I), Title II of the ADA (Count II), and § 1983 (Count IV), and as to Plaintiff's prayer for punitive damages for violation of his civil rights. The motion is DENIED as to Plaintiff's claim under Section 504 of the Rehabilitation Act (Count III).

This the 29th day of June 2005.

/s/ [signature]
United States District Judge